JOHN H. MacCONAGHY (SBN 83648)
JEAN BARNIER (SBN 231683)
**MacCONAGHY & BARNIER PLC**
645 First St. West, Suite D
Sonoma, CA 95476
Phone: 707.935.3205
Fax:    707.935.7051
Email: maclaw@macbarlaw.com

MARK GORTON (SBN 099312)
BASHAR AHMAD (SBN 258619)
**BOUTIN JONES INC.**
Attorneys at Law
555 Capitol Mall, Suite 1500
Sacramento, CA 95814
Phone: 916.321.4444
Fax:    916.441.7597
Email: mgorton@boutinjones.com

Attorneys for Secured Creditor
ROY G. APPLEQUIST

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (SANTA ROSA)

| | |
|---|---|
| In re | **Case No. 2013-10527** |
| MYRA ARIN, | Chapter 13 |
| Debtor. | **SECURED CREDITOR ROY G. APPLEQUIST'S OPPOSITION TO DEBTOR'S MOTION TO DETERMINE VALUE OF CLAIM SECURED BY JUDGMENT LIEN ON PROPERTY AND FOR ORDER AVOIDING THE JUDGMENT LIEN TO THE EXTENT IT IMPAIRS DEBTOR'S EXEMPTION** |
| | Date:    June 12, 2013 |
| | Time:    1:30 P.M. |
| | Judge:   Hon. Alan Jaroslovsky |
| | Place:   Courtroom |
| | 99 South E. St. |
| | Santa Rosa, CA 95404 |

Secured creditor Roy G. Applequist ("Applequist") hereby files his opposition to the

Motion of Debtor Myra Arin ("Debtor") to Determine Value of Claim Secured by Judgment Lien

1

Case: 13-10527   Doc# 26   Filed: 05/29/13   Entered: 05/29/13 14:34:24   Page 1 of 8

on Property and For Order Avoiding the Judgment Lien to the Extent it Impairs Debtor's Exemption ("Motion"), filed on May 11, 2013 (Doc 22-24). This opposition is supported by the concurrently filed Declaration of Mark Gorton and Arlen C. Mills. Appraiser Mills indicates that the improvement in residential market conditions makes it reasonable to assume that the current fair market value of the Debtor's life estate – or its replacement value – is something more than $370,000 previously reported in 2011.

### A. The Debtor's Opinion is Liquidation Value, But the Relevant Standard is What it Would Cost Debtor to Replace the Property.

Debtor seeks to have the court establish the liquidation value of her life estate so that the extent of Applequist's secured claim can be determined. She says the liquidation value is $221,000. *See* Motion at paras. 1, 5; Declaration of Debtor in Support of Motion to Determine Value of Secured Claim ("Arin Decl."), paras. 6, 7, 9 and 17.

First, for purposes of Debtor's Section 522(f) motion to avoid Applequist's judgment lien, the statute itself at Section 522(a)(2) defines the term "value" as used in Section 522 to mean "fair market value as of the date of the filing of the petition." Debtor presents no evidence of the property's fair market value. On that basis alone, the Motion should be denied for failure to sustain her burden of production under 522(f). *See In re Catli*, 999 F.2d 1405, 1406 (9th Cir. 1993); *Soost v. NAH, Inc. (In re Soost)*, 262 B.R. 68, 74 (8th Cir. BAP 2001) ("[T]he debtor bears the burden of proving by a preponderance of the evidence all the elements required to establish his entitlement to lien avoidance under 522(f) of the Bankruptcy Code.").

Second, for purposes of Debtor's Section 506 motion to value Applequist's collateral, in a chapter 13 plan where the debtor proposes to keep the property encumbered by the creditor's lien to generate income, the debtor must pay the secured creditor based on what the debtor would have to pay to obtain the same collateral in the open market – debtor's replacement cost. *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 963-965, 117 S.Ct. 1879, 1885-86, 138 L.Ed.2d 148 (1997). Even before *Rash*, the Ninth Circuit had adopted a similar standard in chapter 11 and chapter 12 cases, and applied it to real estate. *See In re Taffi*, 96 F.3d 1190, 1192 (9th Cir. 1996) ("[T]he value has to be the fair market value of what the debtors are using. The fair market value is

SECURED CREDITOR ROY G. APPLEQUIST'S OPPOSITION TO VALUATION AND JUDGMENT LIEN AVOIDANCE MOTION

1  not 'replacement value' because the House is not being replaced.  The fair market value is the price

2  which a willing seller under no compulsion to sell and a willing buyer under no compulsion to buy

3  would agree upon after the property had been exposed to the market for a reasonable time.").  Here,

4  the Debtor's proposed amended chapter 13 plan calls for Debtor to retain the property and utilized

5  the rents to pay creditors.

6      Debtor presents no evidence of what it would cost for her to replace the property and offers

7  no evidence of fair market value.  For this failure of proof, the Section 506 Motion should be

8  denied for failure to sustain her burden of production under Sections 506(a). *In re Serda*, 395 B.R.

9  450 (Bankr. E.D. Cal. 2008) (Under Section 506, chapter 13 debtor bears the initial burden of

10  production to overcome the presumption established by the stated value in secured creditor's proof

11  of claim).

12      **B.  <u>What Debtor Would Have to Replace.</u>**

13      In determining replacement value, the Court should consider what Debtor would have to

14  replace. *See Associates Commercial Corp. v. Rash, supra*.  This is how the Debtor describes the

15  property in her own words:

16      The Property consists of 42 acres, has an [sic] Main Estate Home with a pool and a

17      pool house, a Gate House, a detached 5 car garage and a detached 2 car garage, an

18      historic Victorian round barn build [sic] in 1891, 3 paddocks, 10 acres of fenced

19      pastures (with three separated areas) doubled fence with pipe and wooden fence.

20      The Property is nested in the foothills near Windsor and abuts Foothill Regional

21      Park which contains horse trails and lakes.

22  See Declaration of Mark Gorton, filed herewith, at **Exhibit A** (Declaration of Myra Arin in

23  Opposition to Order to Show Cause Why an Order for Sale of Judgment Debtor's Dwelling Should

24  Not Issue, at para. 2).  She goes on to further to state, "The Main Estate Home contains 8 rooms, 2

25  ½ baths, a pool, a pool house with dressing room, shower, restroom, a potting room and outdoor

26  kitchen facility." *Id.* at para. 5.  With regard to the Gate House, Debtor declared, "In fact, it is a

27  two bedroom, one bath home . . . ." *Id.* at para. 9.  And finally, as to the Victorian round barn, she

28  avers, "Also, the round barn is extremely large (12,000 square feet with 24 stalls) and contains a

3

two room office with a half bath." Id. at para. 4. "There are only 3 historic round barns in Sonoma County." *Id.* at para. 10.

The life estate property is much more than what most debtors are trying to save as a residential homestead in chapter 13.

## C. Debtor Recognizes Applequist's Appraisal is Replacement Value.

Debtor's Motion new opinion is inconsistent with the $370,000 value in her Schedule A, which she signed under penalty of perjury. *See* Doc 1.[1] This $370,000 value is the same as the market value determined by Applequist's appraiser in October 2011. Debtor explains in the Motion that Applequist's "appraisal estimated a sale value, without consideration of liquidation circumstances, at $370,000." See Motion at para. 4, p. 2:14-15. Under *Rash* and *Taffi*, liquidation circumstances are not relevant.

The difference between sale value (actually, fair market value) and liquidation value appears to account for the discrepancy in Debtor's liquidation value in her Motion and her Schedule A value, which required her to state the "Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption." See Official Form B-6A (Schedule A – Real Property). Thus, it appears that Debtor herself knows that the Schedule A current value of $370,000 more accurately represents what it would cost her to replace the property and its market value.

/ / /

/ / /

---

[1] The new opinion is also inconsistent with her contention in state court judgment enforcement proceeding that the value was $1,031,106. *See* Doc 16 (Debtor's Opposition to Order to Show Cause Why an Order for Sale of Judgment Debtor's Dwelling Should Not Issue, at 8:21, served on November 15, 2012, a copy of which is attached as Exhibit E to the Declaration of Roy G. Applequist in Support of Objection to Confirmation of Chapter 13 Plan, filed herein on April 23, 2013 as Doc 16.).

4

**D. Applequist's Appraisal was $370,000 market value; Current Replacement Value is that Value or More; and Additional Time is Required for a New Appraisal.**

The $370,000 appraisal of the life estate commissioned on behalf of Applequist determined the current market value of the life estate to be $370,000, as of October 16, 2011. Arlen C. Mills, MAI, OREA# AG006567 of the Mills Company, 670 W. Napa Street, Suite H, Sonoma, CA 95476 prepared the appraisal. Declaration of Arlen C.Mills ("Mills Decl.") at paras 2-5.

Market Value is defined in the Applequist's appraisal as "the most probable price a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus." *See* Doc at 12 "Definition of Market Value". The Applequist appraisal goes on to note:

> Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: 1. Buyer and seller are typically motivated; 2. both parties are well informed or well advised, and acting in what they consider their own best interests; 3. a reasonable time is allowed for exposure in the open market; 4. payment is made in terms of cash in U.S. dollars or in term of financial arrangements comparable thereto; and 5. the price represents the normal consideration for property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*Id.* Applequist submits that Market Value represents what Debtor would have to pay to replace the property and is the proper measure of value here.

The underlying basis for the $370,000 life estate market value was a market value of $1,350,000 for the fee simple interest in the property, based on an appraisal also performed by Mr. Mills.

Mr. Mills indicates that that the improvement in residential market conditions makes it reasonable to assume that the current fair market value of the Debtor's life estate – or its replacement value – is something more than $370,000 previously reported in 2011. Mills Decl. at

5

SECURED CREDITOR ROY G. APPLEQUIST'S OPPOSITION TO VALUATION AND JUDGMENT LIEN AVOIDANCE MOTION

1  para. 7.

2       Mr. Mills is not available to prepare a complete documented appraisal of the current market

3  value of the life estate. His now limiting his practice to forensic appraisal and no longer writing

4  complete reports. He has recommended a new appraiser be hired. Mills Decl. at para. 6.

5      **E.  Debtor's Opinion of Value is Inconsistent with Her $1+ Million Value in the State**

6        **Court Judgment Enforcement Proceedings.**

7       On November 15, 2012 in the state court judgment enforcement proceedings, Debtor

8  through her state court counsel maintained the life estate should be valued at $1,031,106. *See*

9  Declaration of Mark Gorton, filed herewith, at **Exhibit B** (Declaration of Marshall E. Bluestone in

10  Opposition to Order to Show Cause Why an Order for Sale of Judgment Debtor's Dwelling Should

11  Not Issue at para. 4). She also gave supporting evidence that real estate values in Sonoma County

12  are on "the up swing." *Id*. at para. 2.

13      **F.  Debtor's Value is Unsupportable Under Applicable Judgment Enforcement Law.**

14       Debtor's new opinion of value is also unsupportable under applicable nonbankruptcy law.

15  Her valuation assumes no recovery on account of Mr. Applequist's judgment against her. The state

16  court will not allow the homestead to be sold unless there will be some proceeds available to

17  reduce the judgment. California Code of Civil Procedure section 704.780 prohibits the sale of a

18  judgment debtor's homestead if the court determines that the sale of the dwelling would not be

19  likely to produce a bid sufficient to satisfy "*any*" part of the judgment. In the pending state court

20  judgment enforcement proceedings, Mr. Applequist has sworn that he will bid no less than 90% of

21  the property's $370,000 current value, or $330,000. In effect, Applequist has agreed to a condition

22  on the state court's issuance of order of sale that he bid at least $330,000. Assuming pays in cash

23  the $175,000 homestead exemption, the $50,000 for Sonoma County delinquent real property taxes

24  and the sheriff's costs of sale, remainder of Applequist's $330,000 bid will be by credit and reduce

25  the judgment in like amount. This will satisfy in full Applequist's secured claim and leave any

26  shortfall as an unsecured claim payable through the bankruptcy case.

27  / / /

28  / / /

6

### G. **Debtor's Motion Fails to Apply Section 522(f).**

Debtor's motion does not explain the application of Section 522(f). The formula under Section 522(f) calculates the "extent of impairment" as the sum of the judgment sought to be avoided, all of the superior liens on the property, and the dollar amount of the available exemption. The value of the subject property is then deducted from that total. Finally, the difference is then compared to the amount of the judgment lien sought to be avoided. If the difference is less than the amount of the lien sought to be avoided, then only partial avoidance is granted. *Bank of America National Trust and Savings Association v. Hanger (In re Hanger)*, 217 B.R. 592 (BAP 9th Cir. 1997), *affirmed by In re Hanger*, 196 F.3d 1292 (9th Cir.1999).

Here, Applequist's judgment lien as of August 16, 2012 totaled $427,751.21. *See* Claim Doc . There is a senior tax lien on the Windsor Property of $46,650.50; and Debtor claims an exemption of $175,000. Applequist's valuation of $370,000. The formula applies as follows;

$427,751.21  Judgment Amount

46,650,50  Senior Tax Lien

<u>175,000.00</u> Exemption Amount

649,401.71

<u>(370,000.00)</u> Property Value in Absence of Liens

279,401.71  Extent of Impairment


427,751.21  Judgment Amount

<u>(279,401.71)</u>  Extent of Impairment

$148,349.50  Portion of Judgment Lien Not Impairing Exemption

Thus, after application of Section 522(f), Applequist's judgment lien and secured claim would be $148,349.50. The balance of his claim would be an unsecured in the amount of $279,401.71.

### H. **Conclusion.**

For the foregoing reasons, the Debtor's valuation motion should be denied except to the extent the property's replacement value is determined to be $370,000 (or more); the judgment lien avoidance motion should be denied except to the extent of $279,401.71 (or less) in impairment; and

7

Case 13-10527    Doc# 26    Filed: 05/29/13    Entered: 05/29/13 14:34:24    Page 7 of 8

1   Applequist's judgment lien should be determined to be secured to the extent of $148,349.50 (or

2   more).

3   DATED: May 29, 2013

4

5                                     BOUTIN JONES INC.
Attorneys at Law

6                            By: _____ /s/ Mark Gorton _____

7                                        Mark Gorton

8                                 MacCONAGHY & BARNIER PLC
John H. MacConaghy

9                                 Jean Barnier

10

11                                 Attorneys for Secured Creditor
ROY G. APPLEQUIST

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECURED CREDITOR ROY G. APPLEQUIST'S OPPOSITION TO VALUATION AND JUDGMENT LIEN
AVOIDANCE MOTION